**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM D. MUNDINGER TRUST U/A 10/13/00 ET AL.,** | ) ) ) | **CASE NO.4:08CV1226** |
| Petitioner, | ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| vs. | ) ) | |
| **TRUSTEE, RICHARD G. ZELLERS** | ) ) | **OPINION AND ORDER** |
| Respondent. | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Trustee Richard Zellers' Motion for Partial Summary Judgment (ECF # 16), and Petitioners' Motion for Summary Judgment as to the Claims of Richard G. Zellers, Trustee (ECF # 22).  For the following reasons, the Court denies the Trustee's Motion and grants, in part, and denies, in part, Petitioners' Motion.

<u>**Background Facts**</u>

The Court recounts the relevant facts as outlined in its Opinion and Order of May 1, 2009. This case arises out of a bankruptcy involving Youngstown Steel & Door Industries, Inc. ("YSD").  The debtor, YSD, is a closely held corporation whose shareholders at the time of this

action were Petitioners William Mundinger ("Mundinger") and William Peters ("Peters").  At all relevant times, Mundinger and Peters also acted as officers and directors of YSD.  YSD was previously a wholly-owned subsidiary of The Lamson & Sessions Co. ("Lamson") until 1988, when Lamson sold YSD to Mundinger and Peters.

As part of the sale of YSD to Mundinger and Peters, Lamson required YSD to assume liability for various obligations to YSD's employees and retirees, as well as liability for certain asbestos claims.  Guarantees and indemnification provisions are included in the Purchase Agreement and Settlement Agreement in which YSD assumed these obligations.

In late 2001, YSD was informed that its insurer, Anthem, was demutualizing and, as a result, YSD would receive a large amount of stock in Anthem.  YSD contacted its normal counsel, Henderson, Covington, outside counsel Jones Day, its own financial officer, Stanley Cosky, and YSD's outside accountant, Phil Dennison and the accounting firm of Packer Thomas & Co., regarding the propriety of the shareholder distributions.  No one advised against the distributions.  Thus, in July and October 2002, YSD distributed the demutualization proceeds and other assets to its shareholders, Mundinger and Peters.[1]  At various other times, YSD allegedly made other distributions or transfers to Mundinger and Peters and also made a prior distribution to Stanley Cosky, a shareholder and Chief Financial Officer of YSD.  In either 2002 or 2003, Triax-YSD, Inc., a wholly owned subsidiary of YSD, was "spun-off" of YSD as a stand alone corporation with Mundinger, Peters and James Messenger, an attorney who provided legal services for YSD, as its directors, officers and/or shareholders.

Sometime in the Spring of 2003, YSD could no longer meet all its debt obligations,

---

[1]    Trustee disputes the dates of these distributions.

including those contained in the Settlement and/or Purchase Agreements.  As a result, Lamson was forced to pay the obligations it had guaranteed.  In July 2004, Lamson filed suit in the Cuyahoga County Court of Common Pleas, asserting breach of contract by YSD, fraudulent transfers, breach of contract via alter ego liability, and unjust enrichment against Mundinger and Peters.  Lamson's allegations included assertions that YSD was either insolvent at the time of shareholder distributions made to Mundinger and Peters or that such transfers and distributions rendered YSD insolvent and unable to meet its obligations and debts.

In June 2005, YSD filed for bankruptcy under Chapter 7 and Lamson's suit was removed to the United States Bankruptcy Court for the Northern District of Ohio as an adversary proceeding.  The bankruptcy trustee ("Trustee") successfully moved to substitute himself for certain of Lamson's claims.  In his Fourth Amended Complaint, the Trustee alleges claims for Fraudulent Transfer in violation of O.R.C. § 1336.04 against Mundinger, Peters, Cosky, the Mundinger Trust, Mrs. Mundinger, Karen Mundinger Trust, William Peters Trust, Mr. Peters and the Deanna Peters Trust (Count II), Fraudulent Transfer against YSDI, Mundinger, Peters, Cosky, the Mundinger Trust, Mrs. Mundinger, Karen Mundinger Trust, William Peters Trust, Mr. Peters and the Deanna Peters Trust in violation of O.R.C. § 1336.05 (Count III), Breach of Fiduciary Duty against Mundinger, Peters and Messenger (Count IV), Unjust Enrichment against Mundinger and Peters (Count VI), Unlawful Dividends against Mundinger, Peters and Messenger in violation of O.R.C. § 1701.95 (Count VII), and Aiding and Abetting Fraudulent Transfer against Messenger (Count X).

**Trustee's Motion for Partial Summary Judgment**

The Trustee moves for Partial Summary Judgment on Count II of the Fourth Amended

Complaint claiming that the alleged March 2003 Distribution in the amount of $167,554 and the April 17, 2003 Triax spin-off were fraudulent transfers under the Ohio Revised Code.  The parties dispute the dates of the transfers.  The Trustee alleges the Defendants back-dated documents evidencing the date of the transfers to make it appear they occurred in 2002 when they actually occurred in 2003.

## STANDARD OF REVIEW

A summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994).  The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited (by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.R.Civ.P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

The Court does not have the responsibility to search the record *sua sponte* for genuine

issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir.1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 (D.C. Cir.1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.2003)(quoting *Anderson*, 477 U.S. at 251-52).

## ANALYSIS

### Trustee's Motion for Partial Summary Judgment on his Fraudulent Transfer Claim (Count II)

According to the Trustee's Motion, YSD made cash distributions to Mundinger and Peters totaling $167,554 in March of 2003 and transferred ownership interest in Triax to Mundinger and Peters on or after April 17, 2003.  Triax's value at the time of the transfer was $1,241,347.  The Trustee contends these transfers violated Ohio Revised Code § 1336.04(A)(2) which states:

> **1336.04 Intent to defraud; property depletion; debts incurred beyond ability to pay**
>
> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

5

*** 

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

In support of his argument that the alleged distributions from YSD to Mundinger and Peters of $167,554 occurred in March 2003, the Trustee offers no evidence or argument but merely cites the Court to Lamson's Memorandum in Support of Lamson's Motion for Partial Summary Judgment.[2]  Lamson's brief offers as evidence YSD's March 2003 balance sheet which reflects a distribution to shareholders in the amount of $167,554.  Furthermore, Mundinger and Peters admitted, according to Lamson, in their State Court Answer at Paragraph 19 that "In March 2003 Mundinger and Peters as directors of YSDI, authorized YSDI to make a distribution to Mundinger and Peters, as shareholders of YSDI, in the amount of $167,556, according to YSDI's financial statements."  Mundinger and Peters reiterated the same admission in their Answer to the Trustee's Amended Complaint.

In their Opposition, the Mundinger and Peters' parties argue that the above admissions merely admit that the financial statements indicate such a distribution based on an internal accounting record.  However, Mundinger stated in his deposition that the alleged distribution was

---

[2]  Aside from an obvious attempt to circumvent the page limitations placed on dispositive motion briefs under this Court's Local Rules, such practice of incorporating another parties' brief for both argument and evidence as substitute for one's own fails to satisfy movant's own obligation to meet its burdens of proof and the Court admonishes counsel to refrain from such practice in the future.

merely an "accounting adjustment" (Mundinger depo pg 156-7).  Messenger, on deposition, stated that "there was no distribution that we knew about that was made in March of '03.  The last one was made in October of '02.  I don't know why it was booked there, but I believe its inadvertent and its not correct." (Messenger depo. pg. 356).  According to YSD's accountant, Phil Dennison, " Based on my review it is still my opinion that there was no shareholder distributions in calendar 2003 relating to the company's receipt of Anthem stock." (Dennison aff. ¶ 4).  Lastly, Mundinger and Peters offer the deposition of Trustee's expert William Krieger, wherein he states that his report assumed no distributions beyond October 2002.  (Krieger depo. pg. 28-29, 147).

The parties both agree there exists an entry in the financial records of YSDI that a $167,554 distribution was made in March 2003.  However, because of the conflicting testimony on whether such a distribution actually occurred in 2002 there exists a genuine issue of fact.  Furthermore, the Court agrees with Mundinger and Peters that the admissions made in response to prior Complaints can be read to merely be an admission that, according to YDSI's financial statements, a distribution was made in 2003.  Thus, it has no preclusive effect and represents but another piece of evidence for a jury to consider.  Therefore, for the foregoing reasons, the Court denies Trustee's Motion for Partial Summary that there was a March 2003 distribution.

**The Triax Spin-Off Date**

Once again, the Trustee relies on Lamson to do the heavy lifting by incorporating Lamson's arguments and evidence into the Trustee's brief on the alleged date for the Triax spin-off, April 17, 2003.  According to Lamson's brief, there exists strong evidence that Triax was transferred, at the earliest, on April 17, 2003.  First, the stock certificates for the transfer were not

prepared until April 17, 2003, as evidenced by the billing records of YSD's law firm Henderson,

Covington.  Second, Triax's own regulations required that share certificates had to be

surrendered and a written assignment of the shares provided.  Though the share certificates

themselves are dated October 1, 2002, the Trustee contends these were backdated as evidenced

by the letter of David Holmquist, counsel from Henderson, Covington, to Dennison dated March

21, 2003, wherein Holmquist refers to the Triax spin-off in the future tense:

> Enclosed you will find minutes for the YSD Board of Directors
> authorizing and approving various cash distributions to the
> shareholders from the corporation's earned surplus/retained
> earnings. Also included are minutes authorizing distribution of
> Triax-YSD, Inc. shares which **will result** in William D. Mundinger
> getting 64.28572 shares and William Peters getting 35.71428
> shares respectively of Triax-YSD, Inc. shares. (Emphasis added).

Holmquist, in response to a deposition question regarding the above letter stated:

> \*\*\* if Phil [Dennison] were to say, we are not allowed by tax law
> or otherwise to make the distribution at this time, I would have
> gone back to the directors and say: Hold it a minute. We've got to
> come up with another meeting to ***change our future activity***.
> Holmquist dep. at 269, App. Ex. 6 (emphasis added).

The Trustee offers as further evidence that the spin-off did not occur until after April 17,

2003, the LaSalle Bank (YSD's lender) field examination report wherein it states that as of July

2003, Triax was a one hundred percent wholly owned subsidiary of YSD.  Finally, Trustee cites

to YSD's audited financial statements for the year ending Sept. 30, 20002.  Nowhere does it

reflect the Triax spin-off even though, under Generally Accepted Accounting Principles, the

accountants were required to disclose in footnotes any material events occurring subsequent to

September 30, 2002 and prior to the audit report of December 2002.

Also, the Trustee points to the time entry of Henderson, Covington dated April 17, 2003,

wherein it reads:

> Re: Triax USD, Inc.  Prepare additional annual minutes of shareholders and
> directors for 2003; prepare share certificates to conform to USD Industries, Inc.
> distribution shares; letter to W.D. Mundinger.[3]

Thus, according to the Trustee, the above shows that the Triax share certificates were not prepared until sometime on or after April 2003.

According to Mundinger and Peters, there is a genuine issue of fact when the Triax spin-off occurred.  They argue that Ohio law permits the memorialization of corporate actions after the action is taken, so that the effective date remains the date the action was taken, not the date it was subsequently ratified and/or memorialized.  Mundinger and Peters rely on the corporate minutes of YSD and the stock certificates themselves, both demonstrating the spin-off occurred on October 1, 2002.  Mundinger and Peters further contend YSD actually authorized the spin-off in July of 2002 as supported by their deposition testimony.

In the Action by Written Consent of Directors of YSD Industries, Inc. dated October 1, 2002, it reads:

> that there be paid, and charged against the Corporation's earned surplus
> and retained earnings, to the Shareholders of record as of September 30,
> 2002 a dividend distribution of all of the shares of TRIAX-YSD, Inc., such
> shares to be distributed in direct proportion to their share ownership in
> YSD Industries, Inc.

(Mundinger Deposition Exhibit 19; Messenger Deposition Exhibit 31).

The Triax share certificates themselves related to the alleged spin-off are dated October 1, 2002.  Furthermore, Mundinger himself stated in deposition that the distribution of Triax shares

---

[3]  According to the Trustee the reference to USD, Inc. is a clear typographical error as it was intended to mean YSD, Inc.

occurred on October 1, 2002. (Mundinger depo pg. 96). Because the corporate minutes and share certificates support that the spin-off occurred in October of 2002, Mundinger and Peters argue there exists a genuine issue of fact and the Trustee's Motion must fail as a matter of law.

Because both sides have presented competent evidence to support their respective positions on when the subject distributions, including the date the Triax transfer occurred, the Court finds there exists a genuine issue of fact and the Court denies summary judgment for the Trustee.

**Petitioners' Motion for Summary Judgment on the Claims of the Trustee**

Petitioners seek summary judgment on all of the Trustee's claims, contending that the Trustee cannot assert claims for fraudulent transfers of share redemptions or shareholder distributions under the Uniform Fraudulent Transfer Act ("UFTA") O.R.C. § 1336 et seq. Rather, such transactions are governed by general Ohio corporation law as codified in O.R.C. § 1701.95. Petitioners argue that because all of the Trustee's claims derive from the same set of facts -i.e. the distributions made to shareholders- regardless of the caption of the claims, they are all subject to § 1701.95's limitations period. Moreover, § 1701.95 has a two-year statute of limitations and all the Trustee's claims were brought outside the limitation period. Petitioners contend that a specific statute of limitations which governs the conduct alleged (i.e. § 1701.95), controls over more general limitations periods.

Furthermore, Petitioners argue the Trustee's claims rely on the expert report of Gleason & Associates, whose analysis was based on the standard of the UFTA, not Ohio general corporation law.

The Trustee argues that the Bankruptcy Judge already ruled on Petitioners' statute of

limitations arguments on Petitioners' Motion to Dismiss.  There, the Bankruptcy Court Judge determined that the Trustee's claims were not restricted to the two-year limitation period found in § 1701.95 because the Trustee's claims were all distinct claims with their own limitations periods and were not required to be brought under § 1701.95.  Furthermore, the Bankruptcy Judge determined that the Trustee's claims related back to the original complaint filed by Lamson in 2005, since the Trustee was not a new party but was substituted for Lamson on a number of Lamson's claims.

The Court finds that the Bankruptcy Judge has already determined, as a matter of law, that the two-year limitation period does not apply to all the Trustee's claims.  In a thorough and well-written opinion, the Bankruptcy Judge addressed the same claims as asserted by the Petitioners' in their summary judgment motion.  The Court sees no reason to depart from the Bankruptcy Judge's opinion and the Court has not been apprised of any caselaw requiring a different ruling.  The Trustee has set forth sufficient facts to support his fraudulent transfer, breach of fiduciary duty, and unjust enrichment claims, and those are, as the Bankruptcy Judge held, separate and distinct from a shareholder claim under § 1701.95.

Furthermore, as the Bankruptcy Judge pointed out, the express language of § 1701.95 expressly acknowledges there may exist other liabilities imposed upon directors by law. See § 1701.95(A)(1).  The Bankruptcy Judge further determined that a claim under § 1701.95 does not encompass claims alleging fraud.  Lastly, the Bankruptcy Judge specifically held that the Trustee's claim for unlawful dividend brought under § 1701.95 relates back to Lamson's original complaint because it is based on the same set of facts as the fraudulent transfer claims.

Therefore, the Court denies Petitioners' motion insofar as it contends a two-year

11

limitations period under §1701.95 applies to all the Trustee's claims.

The Court further agrees with the Trustee that under the relevant statute of limitations the Trustee's claims against various trusts and trustees are not time barred.   The Trustee's Fourth Amended Complaint alleges fraudulent transfers under O.R.C. § 1336.04 and § 1336.05 (Counts II & III) against the various trusts and trustees.  These claims have a four-year limitation period. The Trustee first named the trusts and trustee defendants in his Third Amended Complaint filed November 8, 2006.  If, as the Trustee contends, the alleged fraudulent transfers occurred in March or April of 2003, the Trustee's claims against these Petitioners would have been made within the four-year limitation period of § 1336.  Therefore, the Court denies Petitioners' Motion for Summary Judgment on Petitioners' theory that the limitations period has run as it relies on facts under dispute.

However, the Court does grant Petitioners' Motion for Summary Judgment with respect to all Trustee's claims against James Messenger.  The Trustee has alleged claims against Messenger for breach of fiduciary duty (Count IV), unlawful dividends in violation of § 1701.95 (Count VII), and aiding and abetting fraudulent transfers (Count X).  Messenger was first named as a Defendant in the Trustee's Fourth Amended Complaint, filed June 21, 2007.  According to Trustee's Fourth Amended Complaint, Messenger breached his fiduciary duty when he, along with Mundinger and Peters, authorized the distributions from YSD to Mundinger and Peters and various trusts.  The Fourth Amended Complaint alleges that the distributions occurred sometime on or before April 3, 2003. (Fourth Amended Complaint para. 42).   Therefore, both the breach of fiduciary duty claim (four year limitation period) and unlawful dividends claims (two year limitation period) expired prior to Messenger being named as a Defendant.  While the Trustee

12

contends his claims relate back to the original complaint filed in 2004 by Lamson, relation back does not apply to new Defendants.  As the Sixth Circuit recently held:

> "[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.' " *In re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1449 (6th Cir.1991) (quoting *Marlowe v. Fisher Body,* 489 F.2d 1057, 1064 (6th Cir.1973)); *see also United States ex rel. Statham Instruments, Inc. v. Western Cas. & Surety Co.,* 359 F.2d 521, 523 (6th Cir.1966) (stating that, when "[t]he effect of Plaintiff's amendment is to add another party[,]" it "establishes a new and independent cause of action which cannot be maintained when the statute has run, for the amendment is one of substance rather than one of form and brings into being one not presently in court."); *Smart v. Ellis Trucking Co., Inc.,* 580 F.2d 215, 218 (6th Cir.1978).

*Asher v. Unarco Material Handling, Inc.* 596 F.3d 313, 318 (6th Cir. 2010).

Because Messenger was not a party prior to the Fourth Amended Complaint, the Trustee's claims against Messenger do not relate back to the original Lamson Complaint and cannot be used to extend the limitations period.  Therefore, the Court finds that all of the Trustee's claims against Messenger were filed outside the relevant limitations periods and grants summary judgment in favor of Messenger on all Trustee's claims.

Even if the Court were to assume the Trustee's claim against Messenger for aiding and abetting fraud was not outside the limitation period, the Court has already determined that Ohio does not recognize a cause of action for aiding and abetting fraud.

The Court, in its Opinion and Order granting Defendant Packer Thomas' Motion for Summary Judgment on Trustee's aiding and abetting claim, held as follows:

The case law of this Circuit recognizes that there exists a split between some federal courts and Ohio appellate courts on the issue.  In a recent decision out of the United States District Court in the Western District of Michigan, the court explained at length the history of the

jurisprudence on this issue and the apparent conflicting state of the law on aiding and abetting in

Ohio.  In *El Camino Resources, LTD. v. Huntington Nat. Bank,* --- F.Supp.2d ----, 2010 WL

2651617, *28 (W.D. Mich., 2010 ) the court stated:

> The situation in Ohio provides a cautionary tale. In one of the principal cases upon which plaintiffs rely, *Aetna Cas. & Sur. Co. v. Leahey Const. Co.,* 219 F.3d 519, 533 (6th Cir.2000), the Sixth Circuit concluded that the Supreme Court of Ohio would recognize aiding-and-abetting liability, on the basis of dictum in one state Supreme Court case. The state courts failed to follow suit, and six years later, the Sixth Circuit expressed doubt that Ohio would recognize such a cause of action after all. In *Pavlovich v. National City Bank,* 435 F.3d 560 (6th Cir.2006), the court rejected a claim of aiding and abetting against a bank both because "Ohio law is unsettled whether this cause of action exists" and because the plaintiff could not establish a *prima facie* case. 435 F.3d at 570. On the first issue, the court stated that, six years after *Aetna Casualty,* it was still "unclear" whether Ohio would recognize a common law cause of action for aiding and abetting tortious conduct. *Id.* (citing *Federated Mgmt. Co. v. Coopers & Lybrand,* 137 Ohio App.3d 366, 738 N.E.2d 842, 853 (2000) ("Ohio does not recognize a claim for aiding and abetting common-law fraud.")). Nevertheless, the lower federal courts in Ohio consider themselves bound to follow *Aetna Casualty, see, e.g., Metz v. Unizan Bank,* No. 5:05cv1510, 2008 WL 2017574 at *17 (N.D.Ohio May 7, 2008), creating the anomalous situation in which the litigants are served up one version of Ohio law in the state courts and another in the federal courts. This is precisely the situation that the *Erie* principle sought to avoid and counsels against an expansive injection into state law of principles that the state courts have not yet applied.

While several district courts since the *Aetna* case have held they are bound by the

predictive holding of the Sixth Circuit in *Aetna*, a plain reading of *Pavlovich*, a subsequent

opinion by the Sixth Circuit, renders such predictive precedent null.  In *Pavlovich*, the Sixth

Circuit expressly held,

> Ms. Pavlovich's final allegation is that the Bank aided and abetted the tortious conduct of Cashel and others generally by executing Cashel's instructions to transfer money from her custodial account. ***This claim also must fail because Ohio law is unsettled whether this cause of action exists and***, regardless, Ms. *Pavlovich* cannot establish a prima facie case.

14

*Pavlovich* at 570 (Emphasis added).

Therefore, the precedent squarely before the Court is that an aiding and abetting claim based on Ohio law "must fail" because the law is unsettled.  As this Court reads *Pavlovich*, which post- dates *Aetna*, the Sixth Circuit considered *Aetna*, and yet still dismissed the aiding and abetting claim.  The Sixth Circuit recognized that, based on post-*Aetna* Ohio appellate court decisions, Ohio has not recognized a cause of action for aiding and abetting.  Thus, the predictive holding of *Aetna* is no longer controlling precedent in light of intervening Ohio appellate decisions as interpreted by *Pavlovich*.  In fact, under complementary Sixth Circuit precedent, the Court has held that decisions of state intermediate courts are binding authority in federal courts in the absence of any state Supreme Court precedent. *Wieczorek v. Volkswagenwerk, A.G.,* 731 F.2d 309, 310 (6th Cir. 1984) citing *West v. American Telephone & Telegraph Co.,* 311 U.S. 223 (1940).  Therefore, the Court holds that a plain reading of *Pavlovich* requires the Court find that the Trustee's claims for aiding and abetting must be dismissed as Ohio does not recognize such a cause of action.

Therefore, the Court grants summary judgment for Messenger on the Trustee's aiding and abetting fraud claim.

**Trustee's evidence of actual fraud**

Petitioners argue that the Trustee cannot prove the elements of fraudulent transfer under § 1336.04 and § 1336.05 so as to avoid the distributions.

§ 1336.04 states as follows:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred

15

the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Section (B) of § 1336.04 lists a number of "badges of fraud" courts should consider in order to

determine an actual intent to defraud creditors.

(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer

16

was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Under O. R.C. § 1336.02(A), the UFTA establishes insolvency under either of two conditions:

(1) A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation.
(2) A debtor who generally is not paying his debts as they become due is presumed to be insolvent.

The UFTA creates "a right of action for a creditor to set aside an allegedly fraudulent transfer of assets." *Esteco v. Kimpel* No. 07-03, 2007 WL 4696855 *2 (Ohio App. 7th Dist. Dec. 20, 2007). The UFTA allows a creditor to "sue the original transferee and any subsequent transferee for the value of the transferred property." *Id.* An Ohio Appellate Court in *Blood v. Nofzinger,* established the shifting burdens in showing a actual intent to defraud creditors claim. The Court held:

Whether fraudulent intent exists is to be determined based upon the facts and circumstances of each case. If the party alleging fraud is able to demonstrate a sufficient number of "badges," an inference of actual fraud arises and the burden then shifts to the defendant to prove that the transfer was not fraudulent. While the existence of one or more badges does not constitute fraud per se, a complaining party is not required to demonstrate the presence of all badges of fraud; as few as three badges have been held to constitute clear and convincing evidence of actual fraudulent intent. (Citations omitted).

162 Ohio App.3d 545, 559 (Ohio App. 2005).

Here, the Trustee alleges the distributions were fraudulent as to him (the Trustee) and YSD's estate and was intended to hinder, delay or defraud creditors. The Trustee contends the

17

distributions were made with several of the above badges of fraud, including: they were made to insiders (B)(1), they removed assets of YSD (B)(7), YSD did not receive reasonable equivalent consideration for the distributions (B)(8), YSD was insolvent or became insolvent shortly after the distributions (B)(9), and the distributions were made shortly before a substantial debt was incurred (B)(10).

According to Petitioners, the Trustee's only evidence in support of his fraudulent transfer claims is the opinion of the Trustee's accounting expert, found in the Gleason report, wherein he opines YSD was unable to meet its obligations on or shortly after the distributions occurred. However, according to Petitioners, the Gleason report found that YSD was balance sheet solvent even after the distributions were made.  At page nine of the Gleason report it states:

> Based upon our analysis, as of June 30, 2002, YSDI was solvent as determined
> by the balance sheet test, as the fair value of its assets exceeded the fair value
> of its liabilities by approximately $3.5 million dollars**, after consideration of**
> **the distributions made through that date. [emphasis added.]** See **Exhibit B.**
> Based upon a review of YSDI's fair value balance sheet as of June 30, 2002,
> the Company remained balance sheet solvent despite the stock redemption and
> shareholder cash distributions that had occurred through that date.

While Petitioners acknowledge that the Gleason report concludes that YSD was unable to pay its debts after June 30, 2002, they argue that this conclusion was based on an inappropriate standard -i.e. the UFTA as opposed to § 1701, and relied on an erroneous, and factually unsupported, conclusion that YSD had no available credit as of June 30, 2002.  They argue that this conclusion is rebutted by the financial statements of YSD showing shareholder distributions made as of October 2002.  These financial statements were reviewed by YSD's bank, LaSalle, on

a monthly basis, yet, Michael Tarvid, a vice-president at LaSalle testified that YSD had credit availability even after February 2003, thus supporting Petitioners' contention that YSD was, in fact, able to meet its obligations after the distributions were made.

Petitioners further contend the Gleason report concluded that YSD should have projected future operational needs requiring retaining the funds distributed based on forecasts of the railroad rolling stock industry found in analyses published in 2003 and 2006.  Instead, they made the distributions knowing the problematic forecasts for the industry thus, rendering YSD insolvent at the time of the distributions or shortly thereafter.   The Trustee's expert, William Krieger, co-author of the Gleason report, was unable to say on deposition what forecasts would have been available to the directors of YSD in order to forecast future business prospects.

> A.  Again, I did not go back and look at the specific information that they had available to them or that they subscribed to or that they had available. However, that notwithstanding, these were individuals who were operating and experienced in the industry and would be well-versed in what those publications were, what forecasts were there. And probably similar information that would have been analyzed in the IBIS report would have also been available to them through the specific source documents.

> Q. Okay. Is it accurate to say that you don't know what reports would have been available to them, but because of the experience of management, you would believe that they would have access to various reports that would give them an ability to forecast?

> A Yes.

(Krieger depo. pg. 215-16).

According to Petitioners, the forecasts cited in the Gleason report were published after the 2002

19

distributions and would not have been available to Petitioners.

Petitioners also contend the Trustee has offered no evidence of actual fraud instead, the evidence demonstrates that at the time of each and every distribution, YSD was current with all its creditors and had available credit.  Upon examination of the "badges of fraud" found in § 1336.04(B), Petitioners argue the Trustee can only show that the transfers were made from YSD to its directors who, by definition, are insiders.  However, by only showing one badge of fraud, the Trustee has failed to meet his burden of demonstrating a fraudulent transfer, since Ohio courts have held that merely demonstrating one or two badges of fraud is insufficient to show fraud per se.  See *Gevedon v. Ivey,* 2003 Ohio 6521, 2003 App. LEXIS 5819 (2003), *Krockers v. Hood,* 113 Ohio App. 3d 478 (1996).

Lastly, Petitioners contend the Trustee's fraudulent transfers claims fail because the Trustee cannot show that YSD received less than a reasonably equivalent consideration for the distributions.  According to Petitioners, dividends paid to shareholders in a closely held corporation, or the increase in the value of the corporation, are the primary reasons shareholders invest in a corporation.  Therefore, the shareholders' investment in the corporation is the reasonably equivalent consideration received by the corporation in exchange for the dividend payments.  So long as the dividend payments are in accordance with applicable law, which Petitioners argue the distributions were, they were reasonably equivalent to their shareholder investments.

The Trustee counters that there is ample evidence of fraud to support his fraudulent transfer claims.  First, the Trustee contends, and Petitioners do not dispute, that the distributions

20

were made from YSD property to Defendants and there existed present and/or future creditors on whose behalf the Trustee may seek to avoid the transfers.

The parties' main dispute lies with whether there exists evidence of actual intent to hinder, delay or defraud creditors.  The Trustee argues there exists six badges of fraud when the transfers occurred.

As previously stated, Petitioners concede that transfers were made to insiders.  Under §1336.04(B)(1), this is one badge of fraud.

The Trustee argues that Mundinger and Peters concealed the subject distributions, which is a badge of fraud under (B)(3),  in that they did not seek, in writing, the consent of LaSalle Bank to the distributions as required by the YSD credit agreement with LaSalle.  They further concealed the distributions from their own accountants, Packer Thomas, since the 2002 audited financial statements failed to reflect the Triax spin-off in 2002, even though Packer Thomas' own expert, Michael Ueltzen, testified that the Triax spin-off should have appeared in the footnotes to the September 2002 audit.  Also, the Trustee contends LaSalle Bank's July 2003 field examination of YSD shows Triax was a wholly-owned subsidiary of YSD as of that date. Finally, the Trustee argues the stock certificates were backdated in order to hide the actual date of the Triax spin-off, which the Court has already determined is a genuine issue of fact for trial.

The Trustee further contends that there is no dispute that the distributions and Triax spin-off undeniably depleted YSD assets, evidencing a badge of fraud under (B)(7) in the amount of $5.7 million dollars and Mundinger and Peters gave no reasonable value for the distributions and Triax spin-off.  Nor does Petitioners' argument that, as shareholders, their investment provided

21

adequate reasonable equivalent value satisfy the reasonable equivalent consideration requirement, according to the Trustee.  The Trustee argues that both Mundinger and Peters received salaries for their employment at YSD and neither can show they provided value in unpaid services to YSD.  Furthermore, the Trustee alleges Mundinger and Peters never invested any of their own money towards the purchase of YSD, rather, they acquired it through a leveraged buy out where the purchase price was paid through seller financing and the sale of YSD assets as evidenced by the Purchase Agreement.

The Trustee argues that the Gleason report establishes, at a minimum, that genuine issues of fact exist regarding whether YSD became insolvent at the time of, or shortly after, the distributions were made, which goes towards another badge of fraud under (B)(9).  The report clearly concludes that YSD was unable to pay its debts as they came due in 2002 and that in March of 2003, YSD admitted it could not meet its debt obligations.  The Trustee further contends that Ohio courts have held that two and one-half year difference between a transfer and the onset of insolvency was sufficient to create a material issue of fact whether the debtor became insolvent shortly after the transfer.  See *Blood, at* 371.  Considering that YSD was incurring substantial monthly expenses in the form of retiree health and life benefits amounting to $48,000/month, the Trustee argues the distributions rendered the company unable to meet these monthly expenditures, evidencing a badge of fraud under (B)(10).

**Constructive fraud**

The Trustee further contends he need not show actual intent to defraud to prevail on a fraudulent transfer claim, rather, he need only demonstrate constructive fraud.  Constructive

fraud may be shown by proving a creditor exists, a transfer was made and that YSD did not

receive reasonably equivalent value for the transfer.  O.R.C. § 1336.04(A)(2) and *Crozin v.*

*Fordu,* 201 F.3d 693, 701 (6th Cir. 1999).  Trustee alleges constructive fraud under

§1336.04(A)(2) and § 1336.05.  § 1336.05 states:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a
> creditor whose claim arose before the transfer was made or the obligation was
> incurred if the debtor made the transfer or incurred the obligation without
> receiving a reasonably equivalent value in exchange for the transfer or obligation
> and the debtor was insolvent at that time or the debtor became insolvent as a result
> of the transfer or obligation.

Trustee must show by a preponderance of the evidence that "the debtor was insolvent or would

be made so by the transfer in issue and that the transfer was made without fair consideration."  *In*

*re Stanley*, 384 B.R. 788, 804 (Bankr. S.D. Ohio 2008).

The Trustee contends the Gleason report clearly demonstrates YSD was unable to meet

its obligations around the time of, or shortly after the distributions were made, either using a

balance sheet test or using the equitable approach to insolvency, which requires the Trustee to

show YSD was unable to meet its obligations at the time of, or shortly after the distributions

occurred.

Having considered the arguments of the Trustee and Petitioners, the Court denies

Petitioners' Motion on the Trustee's claims for fraudulent transfers.  The Court finds there exists

genuine disputed issues on almost every essential fact on the badges of fraud, including:   the

date of the distributions; the financial condition of YSD at the time of the distributions,

specifically, whether they were able to meet their obligations and had access to credit; whether

the distributions were concealed from, among others; YSD's accountants, bank and creditors;

23

and, whether YSD received reasonable equivalent value for the distributions.  Furthermore, the Court has not been apprised of nor found on its own research a specific length of time between the allegedly fraudulent transfer and insolvency that satisfies the § 1336.04's "shortly thereafter" limitation or the length of time after the transfer that would render debtor insolvent.  In *Masonic Health Care, Inc. v. Finley,* 176 Ohio App.3d 529, 533 (Ohio App. 2008), the court held that a three to six month interval between the transfer and the debtor's insolvency satisfied the "shortly thereafter" requirement of § 1336.04.  In *In re Stanley*, at 808, the Court held two years between the transfer and insolvency was too long a period to show debtor was rendered insolvent by the transfer.  But *Blood* held that a two and one-half year interval between the transfer and the death of the debtor whose probate estate did not have sufficient assets to cover its obligations created an issue of fact as to when the debtor became insolvent.  Because there are material disputes when the distributions occurred and when YSD was unable to meet its obligations as they came due, the Court cannot determine when YSD became insolvent rendering summary judgment on either an actual intent to defraud claim or constructive fraud claim inappropriate.  In light of these material factual disputes, the Court finds summary judgment is not warranted and denies Petitioners' Motion on the Trustee's claims.

### Trustee's Breach of Fiduciary Duty Claim

Petitioners further seek summary judgment on the Trustee's claim for breach of fiduciary duty, contending the Trustee has failed to show a breach under the applicable clear and convincing evidence standard.  The parties agree that directors' duties to the corporation are found in O.R.C. § 1701.59 which reads:

24

(B) A director shall perform the director's duties as a director, including the duties as a member of any committee of the directors upon which the director may serve, in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances. In performing a director's duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, that are prepared or presented by any of the following:

(1) One or more directors, officers, or employees of the corporation who the director reasonably believes are reliable and competent in the matters prepared or presented;

(2) Counsel, public accountants, or other persons as to matters that the director reasonably believes are within the person's professional or expert competence;

A party bringing a claim against a director for breach of fiduciary duty must demonstrate that breach of duty by clear and convincing evidence.  O.R.C. § 1701.59 (C)(1), (D).[4]  According to Mundinger and Peters, § 1701.59 requires that the directors consider the best interest of shareholders.  Here, Mundinger and Peters argue YSD took non-operational funds from the Anthem demutualization, and distributed it to shareholders at a time when YSD was in good standing with its lender and had a zero balance on its line of credit.  Furthermore, Petitioners relied on the advice of their accountants and lawyers, whom they contend, advised that Mundinger and Peters could make the distributions.  Therefore, the Trustee cannot demonstrate by clear and convincing evidence they breached their duty.[5]

---

[4]  The Bankruptcy Judge previously held, and this Court agrees, that the general four-year limitation period found in O.R.C. § 2305.09 applies to the Trustee's breach of fiduciary duty claim.  See (Memorandum Opinion Regarding Defendant's Motion to Dismiss pg. 18-19).

[5]  The Trustee contends and Mundinger and Peters appear to agree that there are factual issues precluding summary judgment on Mundinger and Peters' reliance on the business judgment rule defense.  (See ECF # 22 pg. 28, fn.1).

The Trustee contends he can show actual fraud by the directors in authorizing the distributions by means of backdating corporate records and stock certificates.  He further contends he can demonstrate that the subject distributions occurred in March and April 2003 at a time when YSD was insolvent as evidenced by the Gleason report.

The Trustee further argues that Mundinger and Peters cannot hide behind the alleged advice of counsel and their accountants, approving of the distributions, so as to shield them from liability.  O.R.C. § 1701.59(C)(2) reads:

> A director shall not be considered to be acting in good faith if the director has knowledge concerning the matter in question that would cause reliance on information, opinions, reports, or statements that are prepared or presented by the persons described in divisions (B)(1) to (3) of this section to be unwarranted.

Because Mundinger and Peters knew the financial condition of YSD, any claim of reliance on outside accountants or lawyers would be "unwarranted."  According to the Trustee, as described previously, he can show they hid relevant financial data from their accountants. Therefore, the Trustee contends Mundinger and Peters' Motion for Summary Judgment should be denied.

Because the same issues of disputed fact that precluded granting Petitioners' Motion for Summary Judgment on the Trustee's other claims determine the Trustee's breach of fiduciary duty claim, the Court denies Petitioners' Motion for Summary Judgment on this claim as well. In order to determine whether Mundinger and Peters acted in the best interests of  YSD, the trier of fact will need to determine when the distributions occurred and what the financial condition of YSD was at the time those distributions were made.  Both of these issues are heavily disputed with competent evidence.  Furthermore, the status of Mundinger and Peters as disinterested or

26

interested directors under a business judgment defense has been acknowledged by the parties as a further disputed issue of fact.

Finally, the Court finds that there are serious disputes of fact on the nature and meaning of the advice offered by YSD's counsel and accountants on the distributions, including, whether crucial YSD financial data, upon which the accountants and lawyers relied, was intentionally hidden from them by Mundinger and Peters.

Therefore, the Court denies summary judgment for Petitioners based on these factual disputes.

**Unjust Enrichment**

Lastly, Petitioners seek summary judgment on the Trustee's claim for Unjust Enrichment, contending that the Trustee brings his claim on behalf of creditors and no creditor conferred a benefit upon Mundinger and Peters.  Since a claim for unjust enrichment requires that the plaintiff confer a benefit upon a defendant before the plaintiff can recover, the Trustee's claim fails as a matter of law because the benefit to Mundinger and Peters was conferred on them by YSD.

The Trustee counters that under Section 108 of the Bankruptcy Code the Trustee brings his Unjust Enrichment action against Mundinger and Peters on behalf of the bankrupt debtor corporation, YSD.  Therefore, he can meet the elements of an Unjust Enrichment claim.

In *HAD Ents. v. Galloway* 192 Ohio App.3d 133, 139, (Ohio App. 2011), the Court stated the elements of an unjust enrichment claim as follows:

"Under the doctrine of unjust enrichment (i.e., quantum meruit), a party may

27

recover the reasonable value of services rendered in the absence of an express contract if denying such recovery would unjustly enrich the opposing party." In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." (Citations omitted).

The Trustee does not proffer any evidence that creditors conferred a benefit upon Mundinger and Peters, rather, he contends that his unjust enrichment claim is brought on behalf of YSD, where he can clearly show benefits conferred, including the distributions at issue.  The Court finds that the plain language of the Trustee's Unjust Enrichment claim clearly articulates a claim brought on behalf of creditors.  Count VI of the Trustee's Fourth Amended Complaint reads:

> 83. Creditors of YSDI, Mr. Mundinger, and Mr. Peters have conferred various benefits upon them in the form of goods provided and services rendered to YSDI, Mr. Mundinger, and Mr. Peters.

> 84. Upon information and belief, YSDI, Mr. Mundinger, and Mr. Peters had knowledge of the various benefits provided to them by Creditors.

> 85. Under the circumstances, it would be unjust to allow YSDI, Mr. Mundinger, and Mr. Peters to retain the benefits provided by the Creditors without payment.

It is clear that this claim, based on the above language, was brought solely on the benefits allegedly conferred on Mundinger and Peters by creditors.  Since the Trustee points this Court to no  evidence of a benefit conferred by creditors, the Trustee has failed to establish an element of his claim, requiring the Court grant summary judgment in favor of Mundinger and Peters on the Trustee's claim for Unjust Enrichment.

28

Therefore, for the foregoing reasons, the Court denies the Trustee's Motion for Partial Summary Judgment.  The Court grants, in part, Petitioners' Motion for Summary Judgment on the Trustee's Fourth Amended Complaint on all Trustee's claims against James Messenger and on Trustee's Unjust Enrichment claim.  The Court denies Petitioners' Motion for Summary Judgment on the remaining claims of the Trustee.

The Court orders counsel to confer and submit to the Court a proposed case management schedule on any remaining issues.  The proposed schedule shall include dates for a settlement conference and proposed trial dates.

IT IS SO ORDERED.


Date:   April 30, 2012             S:/Christopher A. Boyko
                                   CHRISTOPHER A. BOYKO
                                   United States District Judge

29